**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| CLARENCE SMALL, #220451, | ) | |
| | ) | |
| | ) | CIVIL ACTION NO. 3:08-2828-HFF-JRM |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MCKITHER BODISON, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Clarence Small ("Small"), is an inmate with the South Carolina Department of Corrections serving a sentences of thirty-eight (38) years imprisonment for murder and a five (5) year consecutive sentence for possession of a knife during a crime of violence. Small filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 13, 2008. Respondent filed a return and motion for summary judgment on November 13, 2008. Because Small is *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on November 14, 2008 explaining to him his responsibility to respond to the motion for summary judgment. Small filed his response on December 17, 2008.

**Procedural Background**

Small and Candi Windless ("Candi") had a relationship beginning in 1993 that produced two children. They sometimes lived with Small's mother, Annie Bowers ("Bowers") and relatives. Candi married Rodney Windless ("Rodney") in July of 1998, and they had two children. However,

1

in late 1999 or early 2000 Small and Candi resumed their relationship. On May 18, 2001, Candi came to Small's residence. Bowers was there. Rodney came to the residence and an altercation erupted which ended when Small stabbed Rodney several times which resulted in death.

These events occurred in Aiken County. Small was charged with murder and possession of a knife during a crime of violence. He was represented by Kelly Brown, Esquire. After a trial by jury on May 21 and 22, 2002, the Honorable Rodney A. Peeples presiding, Small was convicted and sentenced. The jury rejected Small's claim of self-defense.

A notice of appeal was filed (Res.Mem., Ex. 2) and an Anders[1] brief was filed by the South Carolina Office of Appellate Defense raising the following issue:

> The judge erred by allowing the police officer who had interrogated appellant to testify that he state, "Maybe I need to talk to an attorney."

(Res.Mem., Ex. 3).

Small did not file a *pro se* brief. The appeal was dismissed by the South Carolina Court of Appeals. *See* State v. Small, Unpubl.Op.No. 2003-UP-770 (S.C.Ct.App. filed Dec. 31, 2003). (Res.Mem., Ex. 5). The Remittitur was returned on February 5, 2004. (Res.Mem., Ex. 6).

Small filed an application for post-conviction relief ("PCR") on February 19, 2004. (App. 257).[2] An evidentiary hearing was held on February 8, 2005. (App. 272). Small was represented by Vincent M. Davison, Jr., Esquire. On May 4, 2005, the PCR court issued a written order of dismissal. (App. 305). A Johnson[3] petition for writ of certiorari was filed by the South Carolina

---

[1] Anders v. California, 386 U.S. 738 (1967).

[2] Exhibit 1 to Respondent's memorandum is the appendix filed in connection with Small's appeal from the denial of his PCR ("App., __").

[3] Johnson v. State, 364 S.E.2d 201 (S.C. 1988); see also Anders v. California, 386 U.S. 738 (continued...)

2

Office of Appellate Defense raising the following issue:

> Whether there was any evidence to support the PCR judge's findings that defense counsel was not ineffective in failing to present testimony to support the defense of self-defense?

(Res.Mem., Ex. 8).

Small filed a *pro se* brief raising the following issues

> Was defense counsel ineffective for not present(ing) testimony to support self-defense?  Self Defense   Was therr (sic) states misconduct, by useing (sic) false testimony.   Brady violation.

(Res.Mem., Ex. 9).

The State filed an informal (letter) response. (Res.Mem., Ex. 10). The South Carolina Supreme Court denied the petition to be relieved and ordered the parties to brief the following issue:

> Did the PCR judge err in finding trial counsel was not ineffective for failing to call petitioner and his mother to testify in support of his self-defense argument?

Thereafter, a petition for writ of certiorari was filed (Res.Mem., Ex. 12), and the Respondent filed a return (Res.Mem., Ex. 13). The Appendix (Res.Mem., Ex. 1) was prepared and the parties briefed the issue (Res.Mem., Ex. 15 and 16). The South Carolina Supreme Court affirmed the PCR court's order of dismissal. *See* Small v. State, Mem.Op.No. 2008-MO-021 (S.C. filed May 12, 2008) (per curiam). (Res.Mem., Ex. 17). The Remittitur was returned on May 28, 2008. (Res.Mem., Ex. 18).

## Grounds for Relief

In his present petition Small asserts that he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:**     Counsel was ineffective for failing to present

---

[3](...continued)
(1967).

|  |  |
|---|---|
|  | testimony to support the petitioners defense of self defense counsel knew that my sole[sic] defense in this case was self defense and my mother was an eyewitness to the events in this case, however counsel did not all her to the stand to give her testimony and my counsel relied on the states witness testimony basically for my defense, and very information was not adduced at trial and I was prejudiced, likewise counsel also advised me not to take the stand also, and I listened to counsel which was a mistake. |
| **Ground Two:** | The Judge erred by allowing the police who had interrogated appellant to testify that he stated, "Maybe I need to talk to an attorney" at trial the police basically testified on my right to remain silent and requesting counsel, and the judge allowed it, which the jury could have drawn the inference that i was hiding something for asking for counsel which is impermissible. |

## Discussion

Since Small filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court

4

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

### A. Procedural Bar

Respondent argues that even though Ground 2 stated above was presented to the South Carolina Supreme Court in Small's <u>Anders</u> brief, it is nonetheless procedurally barred because no contemporaneous objection was made at trial to preserve the issue for review.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

>The United States Supreme Court has consistently enforced the exhaustion requirement.
>
>>The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually

7

reached the merits of the claim.[4] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. See Rose v. Lundy, supra.

### 2.    Procedural Bypass[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings,

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[5]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and

is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th

Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocense as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocense. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

South Carolina has a contemporaneous objection rule. Unless the trial court makes a final ruling on an issue, it is not preserved for appellate review. *See* State v. Rice, 375 S.C. 302, 652 S.E.2d 409 (Ct.App. 2007). The record shows that defense counsel raised no objection when the

11

testimony was offered. (App. 141).

### B. Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Small argues that his trial attorney was ineffective because his mother, Bowers, was not called as a witness to support his self-defense strategy. For many years self-defense was an affirmative defense, and the defendant was required to establish the defense by a preponderance of the evidence under South Carolina common law. State v. Franklin, 80 S.C. 332, 605 S.E. 953 (1908). Several United States Supreme Court decisions raised due process concerns about requiring the defendant to prove the defense.

In State v. Davis, 282 S.C. 45, 317 S.E.2d 452 (1984), the South Carolina Supreme Court approved a suggested charge for trial courts. With respect to the elements of the defense, the Supreme Court suggested:

> Self-defense is a complete defense. If established, you must find the defendant not guilty. There are four elements required by law to establish self-defense in this case. First, the defendant must be without fault in bringing on the difficulty. second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the

> fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance. If, however, the defendant was on his own premises he had no duty to retreat before acting in self-defense. These are the elements of self-defense.

The Supreme Court also suggested the following be charged as to burden of proof:

> If you have a reasonable doubt of the defendant's guilt after considering all the evidence including the evidence of self-defense, then you must find him not guilty. On the other hand, if you have no reasonable doubt of the defendant's guilt after considering all the evidence including the evidence of self-defense then you must find him guilty.

The language required by the South Carolina court is slightly more favorable to a defendant than that which is constitutionally mandated. Compare State v. Davis, supra, with Martin v. Ohio, 480 U.S. 228 (1987).

Later, the South Carolina Supreme Court clarified that the charge set forth in Davis was not exclusive and that other common law concepts such as the duty to retreat and the right to act on appearances should be charged when appropriate. State v. Fuller, 297 S.C. 440, 377 S.E.2d 328 (1989). In State v. Wiggins, 330 S.C. 538, 500 S.E.2d 489 (1998), the Supreme Court, in considering whether denial of a directed verdict was appropriate, indicated that the State has the burden of disproving a claim of self-defense. The Court further clarified the issue in State v. Addison, 343 S.C. 290, 540 S.E.2d 449 (2001) by holding:

> When self-defense is properly submitted to the jury, the defendant is entitled to a charge, if requested, that the State has the burden of disproving self-defense by proof beyond a reasonable doubt.

Counsel's trial strategy was to show that Small acted in self defense. The trial court instructed the jury on murder, voluntary manslaughter, and gave an appropriate charge on self defense. (App. 216-220).

Other than Small and the victim, there were two witnesses to the incident - Candi and Small's mother, Bowers. Candi was the first witness called by the State. When the State rested, Small's counsel made a motion for a directed verdict which was denied. (App. 180-181). The trial judge then verified that counsel had advised Small of his Fifth Amendment rights. (App. 182). After a short recess counsel advised the court that the defense would present no evidence. (App. 183). Neither Small, Bowers, nor anyone else testified for the defense.

Small contends that it was error that neither he nor his mother were called to testify at trial. Small, Bowers and trial counsel testified at the PCR hearing. The PCR court credited counsel's testimony and found that after being advised of his rights, Small made the decision not to testify. (App. 308).

With respect to Bowers, the PCR court found that trial counsel did not commit error by failing to call her and that Small had not shown prejudice. The PCR court credited trial counsel's testimony that an investigator interviewed Bowers for counsel prior to trial and that, even though Bowers testimony might have benefitted the self-defense argument, and found that it was reasonable trial strategy not to call her, or present other evidence, so that the defense could make the final closing argument under South Carolina procedure. (App. 308-309).

Under the first prong of the Strickland test, there is a "strong presumption" that counsel's trial strategy and tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Courts are understandably reluctant to second guess tactical decisions of trial lawyers. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977).

### C. Testimony of Inspector Fleury

Small asserts that the trial court erred by allowing Investigator Fleury of the Aiken County

Sheriff's Office to testify that when Small was asked to give a video tape statement on the night of his arrest, he replied

> "You know, I've already told you what happened, I don't want to tell you again...Maybe I need to talk to an attorney."

(App. 141).

As noted above, trial counsel did not object to the testimony, and this issue was presented in Small's Anders brief. In that brief, Small argued that the testimony was a violation of the holding of Doyle v. Ohio, 426 U.S. 610 (1976). The brief noted, "(i)t may be, however, that Small will have to raise the issue in post-conviction relief, since defense counsel did not objet to the officer's testimony." (Res.Mem., Ex. 3).

Small did raise the issue as ineffective assistance of trial counsel in his PCR. (App. 259). However, at the evidentiary hearing the issue was abandoned and it was not addressed by the PCR court. (App. 305). It was not raised in the Johnson petition (Res.Mem., Ex. 8), nor Small's *pro se* brief. (Res.Mem., Ex. 9).

Even if this claim was properly before the Court and considered on the merits, Small would not be entitled to relief.

In Miranda v. California, 384 U.S. 436 (1966), the Supreme Court erected procedural safeguards to protect a defendant's Fifth Amendment rights during a custodial interrogation. Ten years later the Supreme Court held that the Due Process Clause of the Fourteenth Amendment forbids impeachment of a defendant at trial for choosing to remain silent after Miranda warnings had been given. Doyle v. Ohio, *supra*. In Wainwright v. Greenfield, 474 U.S. 284-295 (1986), the Supreme Court found that Miranda and Doyle were premised on an implied constitutional promise that fundamental fairness requires that a defendant's post-arrest silence would not result in his being

penalized. In <u>Noland v. French</u>, 134 F.3d 208, 216 (4th Cir.   ), *cert. denied*, 525 U.S. 851 (1998), the Fourth Circuit adopted the reasoning of <u>Lindgren v. Lane</u>, 925 F.2d 198 (7th Cir. 1998), which held that the mere mention of the exercise of <u>Miranda</u> rights by a defendant is not a per se violation, but that "a <u>Greenfield</u> violation depends on 'the particular use to which the post-arrest silence is being put.'"

There is nothing in the record to suggest that the State sought to exploit Small's post-arrest silence during the trial. Investigator Fleury's recitation of Small's comment were not mentioned again. In essence this was a stray comment offered by Investigator Fleury when he testified about what happened after Small's arrest.

### **Conclusion**

Petitioner has not shown that the state courts' application of these principals was contrary to clearly established Federal law or resulted from an unreasonable determination of facts based on the state court record. It is, therefore, recommended that Respondent's motion for summary judgment be **granted**, and the petition dismissed without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

May 18, 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).